UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL M. CONTI, M.D.,** | : | |
| Plaintiff, | : | Case No. 2:19-mc-00030 |
| -vs- | : | JUDGE Algenon L. Marbley |
| **JOHN DOE,** | : | MAGISTRATE JUDGE Kimberly A. Jolson |
| Defendant. | : | |

## MOTION TO COMPEL

### INTRODUCTION

Plaintiff Dr. Paul M. Conti ("Plaintiff" or "Dr. Conti") respectfully submits this Memorandum of Law in support of his Motion for an Order (i) compelling the deposition testimony of Non-Party Witnesses James and Jane Doe; and (ii) granting such other and further relief as this Court deems just and proper.

### STATEMENT OF THE FACTS

This Miscellaneous Proceeding arises out of a case pending in the United States District Court for the Southern District of New York (S.D.N.Y.), captioned *Conti v. John Doe*, 1:17-cv-09268-VEC (the "New York Action"). In the New York Action, Dr. Conti has sued Defendant John Doe ("John Doe") for defamation, and John Doe has counterclaimed for breach of fiduciary duty, alleging that he suffered emotional harm. (*See* Dkt. Nos. 31, 59 in the New York Action).[1]

---

[1] Given the short time frame for filing this motion, and to avoid any confidentiality disputes, we have not attached any exhibits, including James Doe's deposition transcript, the exhibits used in his deposition, and the transcript setting forth Judge Caproni's privilege ruling in

Based upon John Doe's counterclaim, Judge Valerie Caproni, the Judge presiding over the New York Action, has ruled that John Doe waived his therapist-patient privilege not only as to Dr. Conti, but also other mental health professionals from January 1, 2016 to the present. In essence, Judge Caproni ruled that, given John Doe's long history of mental health and addiction issues, Dr. Conti had the right to inquire of these mental health professionals to ascertain whether Dr. Conti's alleged breach of fiduciary duty was the proximate cause of any emotional and mental health problems burdening John Doe in the period after Dr. Conti stopped treating him.

On July 8, 2019, James Doe appeared for his deposition. During the deposition, his counsel asserted privilege and instructed James Doe not to answer questions within the following general categories:

a. Conversations with Dr. Conti about John Doe at which both James Doe and John Doe were present;

b. Conversations with Dr. Conti at which only James Doe, his wife, and Dr. Conti were present even though counsel permitted James Doe to answer some questions about at least one meeting without objection;

c. Threatening and outrageous emails from John Doe to Dr. Conti – **after John Doe was no longer Dr. Conti's patient** – on which John Doe also copied James Doe (*see* exhibits annexed to Dkt. No. 31 in the New York Action);

d. Conversations between James Doe and John Doe at which no physician was present;

e. An email **which James Doe produced in response to the subpoena served upon him** in which he told a non-physician about the mental health issues of his son, John Doe;

---

the New York Action. We will work with John and James Doe's counsel to ensure that the Court has the underlying documents referenced herein before this motion is fully submitted.

    f.   Emails between Dr. Conti and James Doe and his wife about why Dr. Conti was ending his treatment of John Doe;

    g.   Discussions between James Doe and John Doe about why Dr. Conti had refused to continue treating John Doe, questions as to which James Doe was instructed not to answer after other questions about the issue had been answered without an instruction not to answer based upon privilege;

    h.   Conversations between James Doe and John Doe about whether John Doe had waived his privilege so that Dr. Conti could discuss Dr. Conti's treatment of John Doe;

    i.   Conversations between James Doe and Dr. Conti about whether John Doe had waived his privilege so that Dr. Conti could discuss Dr. Conti's treatment of John Doe.

In addition, counsel for James Doe directed his client not to answer questions on the ground of relevancy.

## ARGUMENT

## PLAINTIFF'S MOTION TO COMPEL SHOULD BE GRANTED

**A.**    **OHIO LAW APPLIES HERE**

Before turning to a discussion of whether privilege was properly asserted here, the Court must first decide which state's law to apply.

**First**, under Fed.R.Civ.P. 45(e)(2), privilege issues arising in depositions which are not conducted in the district where the underlying action is pending must be resolved by "the court for the district where compliance is required" – *i.e.*., the Southern District of Ohio in this instance.

**Second**, "'[a] federal court sitting in diversity applies the substantive law of the state in which it sits.'" *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005) (Citation

omitted). Thus, Ohio choice of law rules apply. *See Performance Contracting, Inc. v. Dynasteel Corp.,* 750 F.3d 608, 611 (6th Cir. 2014) ("[T]o resolve conflicts between state laws, a federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits."); *see also Midwest Feeders, Inc. v. Bank of Franklin,* 2016 U.S. Dist. LEXIS 179325, at \*\*9-10 (S.D. Miss. May 16, 2016) (Mississippi choice of law rules required application of Mississippi privilege law in connection with a subpoena that called for compliance in Mississippi).

**Third**, the Ohio Supreme Court "has adopted the theories stated in the Restatement of the Law 2d, Conflict of Laws" in making choice-of-law determinations. *Lewis v. Steinreich,* 73 Ohio St. 3d 299, 303, 652 N.E.2d 981, 984 (1995).

**Fourth**, under the Restatement, § 139(1), "[e]vidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum."

**Fifth**, the state which has the most significant relationship to any communications between Doe's parents and any third parties is Ohio, where Doe's parents have a home, where they chose to be deposed and, presumably, the place where they were located when many of the communications at issue here were made.

It is therefore clear that Ohio law governs any assertions of privilege by Doe's parents.

**B.   JAMES DOE'S PRIVLEGE CLAIMS**

As we now demonstrate, none of James Doe's assertion of privilege are well taken

### 1. Conversations Between John Doe and James Doe With No Professionals Present

James Doe refused to answer questions about communications (alone or together with his wife) with his son John Doe even where no medical professional was present. As we understand

it, this refusal to answer was based upon two separate privileges: the "parent-child privilege" and the "therapist-patient" privilege. Neither assertion of privilege was appropriate.

"There is no parent-child privilege in Ohio." *In the Matter of Hawkins*, 983 Ohio App. LEXIS 15517, at *6 (Ct. App. May 11, 1983). Since, O.R.C. § 2317.02 does not provide for a parent-child privilege, such a privilege would only be available if it was recognized under common law. *See State ex rel. Leslie v. Ohio Hous. Fin.* Agency, 105 Ohio St. 3d 261, 264 (2005). However, the Sixth Circuit has held that *"*the parent-child privilege did not exist at common law." *United States v. Ismail*, 756 F.2d 1253, 1258 (6th Cir. 1985).

As for the claim that conversations between James Doe and John Doe (and others) about John Doe's treatment are protected by the physician-patient or therapist-client privilege, there is no privilege in Ohio protecting conversations between non-professionals about the subject of one or both of the participants' medical or mental health treatment.

The scope of the physician-patient and therapist-patient privileges are set forth in O.R.C. §§ 2317.02(B) and (C). Both of these sections limit the privilege to confidential communications between (a) a doctor or mental health professional, and (b) a patient or client. The statute in no way protects disclosure of communications between a patient/client and a non-professional third party (or even between two patients/clients being jointly treated) concerning the patient/client's treatment. That ends the inquiry because the Ohio Supreme Court "has repeatedly and consistently refused to engraft judicial waivers, exceptions, or limitations into the testimonial privilege statutes where the circumstances of the communication fall squarely within the reach of the statute." *In re Wieland*, 89 Ohio St. 3d 535, 538 (2000).

### 2. Communications With Dr. Conti After He Stopped Treating John Doe

Plainly, communications with Dr. Conti after he stopped treating John Doe were not privileged because, once the treatment ended, these were not communications between Dr. Conti and a patient/client. Again, there is nothing in O.R.C. § 2317.02 which expands the privilege to discussions with a professional who is no longer treating the person seeking to assert the privilege. While it is possible that under other circumstances, such communications might be privileged, that is not so here because, as shown in part by Plaintiff's First Amended Complaint in the New York Action, John Doe immediately commenced sending outrageous, threatening and defamatory emails and texts to Dr. Conti after he terminated treatment, and the post-treatment communications with Dr. Conti were related to John Doe's assault upon Dr. Conti and the reasons why he ended treatment. Moreover, as discussed below, James Doe and his wife did not even have a privilege to assert with respect to conversations with Dr. Conti.

### 3. Communications between James Doe and Dr. Conti

James Doe refused to testify about any of his or his wife's conversations with Dr. Conti on the theory that they too were Dr. Conti's patients. There is no factual basis for that claim. The contract between Dr. Conti's office and John Doe identified only John Doe as the patient (Deposition Exhibit "James Doe 3")[2], and although it had signature lines for other "clients," John Doe's parents did not sign it. While it is true that John Doe's parents spoke with Dr. Conti and attended a few family sessions, that did not turn them into patients under the contract with John Doe:

> With the exception of certain specific exceptions below, you have the right to confidentiality of your treatment…. When clinicians work with couples or families, all individuals attending sessions **may** be considered clients. This will

---

[2] As noted above, once we have worked out redaction and sealing issues with opposing counsel, we will provide all of the relevant documents to the Court.

>be the case if the type of therapy covers all included individuals, **For example, if a couple is coming for couples therapy, both people are considered clients. However, if a husband, for example, is joining in on one of his wife's sessions, the wife remains the patient, and the husband is not the patient.**

(Emphasis supplied).

Given this provision in the contract, as well as emails from Dr. Conti in which he specifically notes that John Doe has waived his privilege so that Dr. Conti can communicate with his parents, it is clear that John Doe's parents were equivalent to the husband who attends one of his wife's therapy sessions. That Dr. Conti spoke regularly with John Doe's parents only means that John Doe waived the privilege so that Dr. Conti could speak to them. This is of crucial significance because Judge Caproni held that John Doe had waived the privilege as to his communications with Dr. Conti as well as subsequent mental health professionals. It makes no sense that the patient can waive his privilege, but the parents still retain something they never possessed.

## C. PLAINTIFF IS ENTITLED TO REASONABLE FEES AND EXPENSES INCURRED IN MAKING THIS MOTION

Fed. R. Civ. P. 37(a)(5) states that if a motion to compel is granted the Court "**must**, after giving an opportunity to be heard, require the party [or attorney] whose conduct necessitated the motion . . . or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the opposing party's conduct was "substantially justified" or the circumstances otherwise make an award unjust. Fed. R. Civ. P. 35(a)(5)(A) (emphasis added). For the reasons set forth above, James Doe's assertion of privilege was wholly unjustified. There are no circumstances that would render a fee award unjust. Accordingly, James Doe, or his counsel, should be ordered to pay Plaintiff's reasonable expenses and attorneys' fees. Plaintiff will submit proof of its expenses and fees incurred as required once this Motion is granted.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, as well as any prior proceedings heretofore had herein, Plaintiff respectfully requests that this Court enter and Order (i) compelling the deposition testimony of Non-Party Witnesses James and Jane Doe; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: July 15, 2019

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP

By: /s/ David F. Axelrod
David F. Axelrod, Esq. (0024023)
41 S. High St., Suite 2400
Columbus, Ohio 43215
Tel.: (614) 628-4427
Fax: (614) 463-1108
daxelrod@shumaker.com
*Trial Attorney for Plaintiff Dr. Paul M. Conti*

JUDD BURSTEIN, P.C.

By: /s/ Judd Burstein
Judd Burstein
Peter B. Schalk
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
(212) 974-2944 (Fax)
*Attorneys for Plaintiff Dr. Paul M. Conti*

## **CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing Motion to Compel was filed on July 15, 2019 via the Clerk's CM/ECF system which will effect service on all parties.

> */s/* David F. Axelrod
> David F. Axelrod